JOHN MAXWELL, Administrator of ROBERT S. MAXWELL, deceased, *vs.* THE WILMINGTON CITY RAILWAY COMPANY.

New Castle County, November Term, 1893.

**Street Railway.**—Within the fixed lines of its tracks a street railway company lawfully using the street is superior to that of other users of the streets and must not be unnecessarily interfered with or obstructed.

**Same.**—It is the duty of such a company to put and keep its cars and roadway in good condition; to provide competent and careful motormen and servants and to see that they use reasonable care in operating the cars to avoid danger; that they run at reasonable rates of speed, and that they slow up or stop, if need be, where danger is imminent.

**Highway.**—It is the duty of people otherwise using such highway to stop, and, if need be, to turn out of the tracks of the cars in the presence of danger, inasmuch as being free to move at pleasure, they have the use of every part of the highway, while the cars can only use their fixed tracks.

**Same.**—In the use of a public street of a city all parties are bound to exercise reasonable care, to prevent accidents and collisions. Such care must be in proportion to the danger accompanying the particular use in each case.

**Negligence. Proximate Cause.**—Where a person riding upon the public street of a city was struck by an electric street car under which he was thrown and killed, if he was guilty of negligence, which was the proximate cause of the accident, his administrator cannot recover damages.

**Same.**—An action to recover damages for personal injury or death cannot be sustained where there has been mutual negligence and the negligence of each party was the proximate cause of the injury.

**Measure of Damages.**—In an action by an administrator to recover damages for the death of his decedent, the measure of damages is such a sum, as the deceased would probably have earned in his business during life, and which would have gone to his next of kin, taking into consideration the age of the deceased, his ability, disposition to labor and habits of living and expenditure.

**Evidence.**—In an action to recover damages for an injury caused by collision with a street railway car, the city ordinance regulating the rate of speed for steam cars and vehicles is not admissible as evidence of what would be a reasonable rate of speed for an electric car.

**Same.**—The evidence of a member of the Coroner's jury is admissible in a civil action to recover damages for the death of the person who was the subject of the inquest to show statements made by a witness at the inquest for the purpose of contradicting the testimony of a witness at the trial.

**Same. Expert.**—A person who had frequently ridden upon electric cars and knew something about them, having made them and electricity a subject of study, but had never operated an electric car, was held to be competent to testify as an expert as to the effect of sand in the operation of electric cars.

This was an action on the case for damages for the death of Robert S. Maxwell, resulting from a collision with electric car No. 41, operated by the defendant. The trial of the case by a special jury was commenced on February 1, 1894.

At the trial *Bird*, for plaintiff, offered in evidence the ordinances of the city of Wilmington to show the rate of speed therein fixed for steam cars, for vehicles drawn by horses; also the rates for horses ridden by persons, so that the jury might infer therefrom what would be a reasonable rate of speed for an electric car.

On objection by *Bradford*, for defendant, the ordinance was excluded as irrelevant.

*Bradford*, for defendant, called Stephen S. Winchester, for defendant, a member of the Coroner's jury that sat in the case of the death of Robert S. Maxwell, and proceeded to question him in regard to certain statements made by John L. Vansant, having previously laid the ground for the latter's contradiction by this witness and others of the Coroner's jury. *Bird*, for plaintiff, objected that members of the Coroner's jury should not be permitted to testify as to their recollection of the testimony of a witness at the inquest, when the record of his testimony taken in writing at the

time (in longhand), failed to disclose any such statements as are claimed to have been made by him ; that it would be contradicting a record made according to law by the recollection of witnesses.

The objection was overruled.

Counsel for plaintiff called, in rebuttal to the defendant's testimony regarding the effect of sand in its application to electric street railways, a locomotive engineer on the Pennsylvania Railroad of fourteen years' experience. The witness testified that he lived in Wilmington, Del., and was familiar with the effect of sand upon a track, also with the railway tracks in question, and that he had frequently ridden upon the electric cars in said city ; that he knew something about electric cars, having made them and electricity a subject of study, but had never operated an electric car. He was asked the following question :

Assuming a street car operated by electricity coming down Delaware avenue, from Broome street to Clayton, toward the Baltimore and Ohio depot, the car having the wheels that you know they use—steel wheels, as has been testified to by other witnesses; the rails being of steel, as has been testified to ; the rate of speed of the car down that grade being seven or eight miles an hour— state whether one of those cars could be stopped quicker or more suddenly by the application of sand upon the track than it could without sand ?

It was objected by counsel for the defendant that the witness was not competent to speak of the effect of sand in the operation of electric cars.

The objection was overruled and the testimony was admitted, LORE, C. J., dissenting.

*Bird,* for plaintiff (*Peter L. Cooper* and *Sanborn* associated with him in the brief), contended that street railway companies have not an exclusive right to the highways upon which they are permitted to run their cars, or even to the use of their own

tracks. The public have a right to use these tracks in common with the railroad companies. And so long as the right of common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car; *Gibbons vs. Wilkesbarre St. Ry. Co.*, 155 Pa. 279; s. c. 26 Atl. Rep. 417; Booth, St. Railways, § 303; *Shea vs. St. Paul City Ry. Co.*, 50 Minn. 395; 2 Shearm. & Red. Negl. § 462.

The rights of the railway company and the traveller in the use of the street are equal. The only limitation of the right of the latter is that he must not unnecessarily interfere with the passage of cars over the track; 1 Thomp. Negl. 397; *Benjamin vs. Holyoke St. Ry. Co.*, 160 Mass. 3; *Driscoll vs. West End St. Ry. Co.*, 159 Mass. 142; *Shea vs. Portrero and Bay View R. R. Co.*, 44 Cal. 414.

If the plaintiff's intestate was guilty of contributory negligence in not getting his horse out of the way of the car the defendant is liable if its servants could have avoided the accident by ordinary care after seeing him on his horse on the track, or after being able by the exercise of care to discover him there or near it under circumstances of peril; *Baltimore Traction Co. vs. Wallace*, 77 Md. 435; *Gibbons vs. Wilkesbarre St. Ry. Co.*, 155 Pa. 279; *Muncie St. Ry. Co. vs. Maynard*, 5 Ind. App. 372; *Benjamin vs. Holyoke St. Ry Co., supra.*

It is the common law duty of those in charge of a car and particularly of the motorman to exercise ordinary care and diligence to ascertain whether the track ahead is clear, and to avoid striking persons or objects upon or near the track and street, and such attention is required on the part of the motorman as will enable him, as far as practicable, to know the condition of the track, and avoid inflicting unnecessary injury upon others; Booth, St. Railways, § 306; 1 Thomp. Negl. 398; *Baltimore Traction Co. vs. Wallace*, 77 Md. 435.

The motorman is bound to notice the presence of vehicles, horsemen and pedestrians ahead of his car, and where he has reason to apprehend danger he should regulate the speed of his car so that it may be quickly stopped should occasion require it; Booth, St. Railways, § 305.

Where there is imminent danger of striking a person who is at the time upon or crossing the track, it is the duty of those in charge of a car to stop it as soon as may be done with due regard to the safety of the train or its passengers; Booth, St. Railways, § 305; 2 Shearm. & Red. Negl. § 462; *Kestner vs. Pittsburgh, etc., Traction Co.*, 158 Pa. 422; *Pope vs. Kansas City Ry. Co.*, 99 Mo. 400.

The same degree of care is not required of a person crossing or walking along street railway tracks, that is required of a person crossing or walking along the tracks of ordinary railroads. There is a solid foundation for this distinction and to sanction a rule that would impose the same obligation upon persons using the tracks of a street railway as that which obtains where the plaintiff crosses or walks along an ordinary railroad track—would be to practically surrender a street to the Railway Company; *Muncie St. Ry. Co. vs. Maynard*, 5 Ind. App. 372; *Shea vs. St. Paul City Ry. Co.*, 50 Minn. 395. This case decides that failure to look and listen at the crossing of a street railway is not as a matter of law, and without regard to circumstances, negligence. See also Elliott, Roads & Streets, 589, 590; Thomp. Negl. 396 note 1, 398–9; *Lynam vs. Railroad Co.*, 114 Mass. 83.

*Bradford* and *Biggs*, for defendant, contended that even if the defendant was negligent in the operation of car No. 41, whether in respect to the speed, decoration, appliances, or otherwise, the plaintiff cannot recover if the deceased proximately contributed by his own negligence, carelessness or recklessness to the accident. And he was guilty of such contributory negligence, if he failed to reasonably leave the track while within his power after noticing the approach of the car; or, if he crossed over to the northerly side of

Delaware avenue to try or test the colt ridden by him upon the approaching car No. 41 ; or, if he knew or had reason to believe that his colt was nervous, high strung, and not properly broken, and failed to exercise great care to avoid riding it in any place calculated to frighten nervous or unbroken horses, and thereby met with the accident ; or, if the colt became frightened at the electric cars standing in front of the Baltimore and Ohio station a few minutes before the accident, and if he failed to observe all proper care in attempting to pass the approaching car, No. 41, and by reason of such failure the accident happened ; *Cornell vs. Electric Railway Co.*, 82 Mich. 495 ; *Scott vs. Third Ave. Ry. Co.*, 59 Hun 456 ; *Citizens' Pass. Ry. Co. vs. Thomas*, 132 Pa. 504; *Warner vs. Peoples' St. Ry. Co.*, 141 Pa. 615 ; *Cornell vs. Detroit Ry. Co.*, 82 Mich. 495 ; *Phila., Wilmington and Baltimore R. R. Co. vs. Stinger*, 78 Pa. 220 ; *Ehrisman vs. Hamsbury Ry. Co.*, 150 *id.* 180 ; *Winter vs. Fed. St. Elec. Ry.*, 153 *id.* 26 ; *Gilmore vs. Same*, 153 *id.* 31 ; *Haven vs. Bridge Co.*, 151 *id.* 620 ; *Aiken vs. Pa. R. R. Co.*, 130 *id.* 380 ; *Belton vs. Baxter, et al.*, 54 N. Y. 245 ; *North Hudson R. R. Co. vs. Isley*, 49 N. J. 468 ; *Murphy vs. Deane, et al.*, 101 Mass. 455 ; *Demock vs. Town of Suffield*, 30 Conn. 129 ; Laws, Del., Vol. 12, 426.

The doctrine of contributory negligence, as recognized in this State, is well settled ; *Flinn vs. P. W. and B. R. R. Co.*, 1 Houst. 469, 502 ; *Reed & Walker vs. Same*, 3 *id.* 176 ; *Lynam vs. Same*, 4 *id.* 583.

LORE, C. J., (charging the jury.)

This is an action on the case brought by John Maxwell, Administrator of Robert S. Maxwell, deceased, against the Wilmington City Railway Company, to recover damages for the death of the decedent, caused, as it is alleged, by the negligence of the defendant company.

On the 21st day of October, 1892, on what was known as Columbian Jubilee Day, between 12 o'clock midday and 1 o'clock in the afternoon, Robert S. Maxwell, the deceased, who was a mem-

ber of the order of Knights of the Golden Eagle, was riding his
young mare easterly on Delaware avenue, in this city, with two
companions, to join in the parade of that day. Between Clayton
and Rodney streets the mare he was riding was struck by electric
car No. 41, which, propelled by electricity, was passing westerly on
the track of the defendant company. By the collision the mare
was knocked down and pushed ahead of the car, and the rider was
thrown under the truck of the car and killed.

The plaintiff claims that the accident and death resulted from
the negligence of the defendant company ; that at the time of the
accident car No. 41, with defective brakes, draped in flags and
bunting, was descending the grade on Delaware avenue at an un-
reasonable and dangerous speed, with no apparent effort on the part
of the motorman to stop the car, notwithstanding an apparently
frightened and ungovernable horse was in full view upon the track
before him.

The defendant, on the other hand, denies all liability, and
avers, first, that it was in no wise negligent, but made every effort
to prevent the accident; that its car No. 41 and its railway tracks.
were both in good order, its motorman vigilant and efficient; sec-
ond, that even if there was negligence on the part of the company
that there was contributory negligence on the part of the deceased,
in that he was riding a spirited, nervous and unbroken young mare,.
and that he voluntarily crossed with her in front of an approach-
ing car, from a safe position to a dangerous one, from the south to
the north side of the street.

Delaware avenue, along which the tracks of the defendant
company run, is a public highway of this city, which the defendant
company has a right to use for the operation of its electric railway,
in common with travellers, who may elect to use it, on foot, on
horseback, in vehicles drawn by horses or otherwise. Every part
of this highway may be rightfully used by the public. The elec-
tric cars can use only a part of it, as they move only in fixed lines
over their tracks. Within these lines the right of the company is

superior to that of other users, and must not be unnecessarily interfered with or obstructed.

These cars, although belonging to a private corporation, are used for public convenience, carrying many passengers, and meeting, largely, the growing demand for rapid transit in city life.

In using this highway all parties are bound to exercise reasonable care to prevent accidents and collisions. Such care must be in proportion to the danger accompanying the particular use in each case.

It is the duty of the company to put and keep its cars and roadway in good condition; to provide competent and careful motormen and servants and to see that they use reasonable care in operating the cars to avoid danger; that they run at reasonable rates of speed, and that they slow up or stop, if need be, where danger is imminent. There is a like duty on the part of people otherwise using such highway to stop, and if need be to turn out of the tracks of the cars in the presence of danger; inasmuch as being free to move at pleasure, they have the use of every part of the highway, while the cars can only use their fixed tracks. You will readily perceive if this were not so that travel in electric cars would be at the mercy of every person who saw fit to place himself on the tracks, and rapid and convenient transit of passengers thereby would be at an end. Both parties, therefore, were rightfully on Delaware avenue on that fateful day. We are, therefore, confronted with the crucial question in this case, Did the accident and death of Robert S. Maxwell result from the negligence of the defendant company?

If the defendant company was guilty of no negligence your verdict should be for the defendant. If you believe, however, from the evidence that the defendant was guilty of negligence, but that the deceased, Robert S. Maxwell, was guilty of the negligence that was the proximate cause of the accident and death, then he contributed to the accident, and the plaintiff, his administrator, cannot recover. "Where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury no action

whatever can be sustained." 4 Am. & Eng. Encyc. of Law, 16; *Praw vs. Vermont Central Railroad Company*, 4 Vt. 487, and other cases.

If, however, you believe from the evidence that the defendant company was negligent, and that such negligence was the proximate cause of the accident and death; in that case, although the deceased might have been guilty of some negligence, it would not be contributory negligence, and the plaintiff would be entitled to recover, for it is now well settled " that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's failure, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him." Shearm. & Redf. Negl., §99, and cases cited.

This is now the well settled law in this State; *Jones vs. Belt*, 8 Houst. 562, and *Ford vs. Charles Warner Company, supra.*\*

This whole question of negligence is for your determination under the law as the Court has above laid it down. You are to say whether there was negligence on either or both sides, and what was the effect thereof in causing the death of the deceased.

In determining this question of negligence you are to take into consideration the day, the place, the actors, their conduct, surroundings and all the circumstances connected with the sad tragedy, and after a careful and thorough review to say where the blame, if any, lay.

Inasmuch as the plaintiff claims damages, because of the alleged negligence of the defendant, the burden of proof is on the plaintiff to show such negligence to your satisfaction by a preponderance of the evidence.

In reaching your verdict in this case you must be governed only by the evidence. No declarations or statements not supported

---

\*See page 88 for the opinion of the Court in this case.

Charge.

by that evidence, and no information from any other source should be considered by you for one moment.

There is great conflict of testimony in this case on nearly every material point. In considering a conflicting testimony the rule is that you must reconcile it if you can. If you cannot reconcile it, then you should give credit to and be governed by that testimony which in your judgment is most worthy of belief, taking into consideration the intelligence, apparent truthfulness, bias or impartiality of the witness, his manner and conduct upon the stand, and his opportunity of getting correct information. When this is done the weight of the evidence in your best judgment must control your verdict.

Should your verdict be for the plaintiff, the measure of damages is such a sum as the deceased would probably have earned in his business during life, and which would have gone to his next of kin, taking into consideration the age of the deceased, his ability, disposition to labor and habits of living and expenditure.

If you find for the defendant your verdict should simply be for the defendant.

*February 1, 1894.*

After remaining out twenty-eight hours the jury returned and reported that they could not agree, and they were discharged.